Nott, J.,
delivered the opinion of the court:
The statutes of the United States prescribe a number of remedies whereby debts due to the Government by its own officers, *215 agents, or creditors can be summarily collected or securedbut, inasmuch as the payments made by military officers are frequently made under orders which they can not disobey, or amid circumstances in which the public welfare does not admit of investigation or delay, a stoppage of their pay can not be compelled by the accounting' officers of the Treasury, but only by their official head, the Secretary of War. (Army Regulations, 1881, par. 2445.)
It is manifest that Congress never intended that a Secretary of War should order a paymaster or quartermaster to make a payment and then, upon the requisition of the accounting officers of the Treasury, punish the officer for having made it by stopping his pay. The power given to the Secretary is a reasonable one and it is to be reasonably exercised, and that it may be it is placed entirely within his discretion. That discretion requires that while the power of summarily stopping an officer’s pay may be asserted against a delinquent officer or against one who, without being delinquent, has acted upon his own responsibility, it is not to be asserted against one who has acted in obedience to orders, and whose act was really tbe act of his military superior, which he was bound to obey, and as to which he is expressly relieved from personal liability. (Army Regulations, 1881, par. 1653.) Such an abuse of the power would not tend to preserve, but to subvert, military order and discipline. The refusal of the Secretary of War to stop an officer’s pay is not a decision upon the merits ; it will not bind the Government nor preclude the Comptroller from causing a suit to be brought against the officer; it merely determines that the officer is so far without fault that the harsh and summary remedy of stopping his pay should not be resorted to.
The ground upon which the Second Comptroller refused to allow the item for the payment of experts was that the Army Regulations prescribe a less rate of compensation for civilian witnesses.
The regulations referred to are the regulations of an Executive Department, ratified by statute, and having the force of law. (Acts 28th July, 1866; 23d June, 1879, 14 Stat. L., 337, § 37,2d ed., p. 30, § 2.) But regulations which were prescribed and framed by the Secretary of War and which are intended for the direction and government of the officers of the Army and agents of the Department do not bind the Commander-in- *216 Chief nor the head of the War Department. (Burns’s Case, 12 Wallace R., 246.) The Second Comptroller, therefore, could not properly rely upon the Army Regulations as authority for refusing to pay an expenditure ordered by the Secretary of War.
What are termed experts are not necessarily or properly witnesses. Their office may be simply to aid in the preparation of a case without being called to testify, and they are frequently employed to aid counsel in the cross-examination of witnesses. In the complexities of modern civilization they are constantly resorted to in all courts, civil and criminal; and it would be preposterous to say that a single department of the Government is the only litigant that can not have the benefit of their services, or that in a trial of this nature the Government can nót be assisted by experts, when the defendant can.
All persons in the course of ordinary life are liable to witness the transactions, or casualties, or crimes of their fellowmen. In such cases public necessity requires that they may be compelled to testify either with the incommensurate remuneration which the law allows or with none at all.
The burden of doing so must be borne by him on whom it falls, and the chance which casts the often unpleasant, or painful, or prolonged duty of attending court and being subjected to the examination of counsel, is a chance which may fall upon any member of the community. A surgeon walking down the street and witnessing an accident or murder may describe the injuries 6f the victim more clearly thau an ordiuary beholder. But he is not an expert; he is merely the fortuitous witness of an occurrence concerning which he may be made to testify. The laws which regulate the fees of witnesses refer to such persons — to those who can be compelled involuntarily to testify. But the expert is one who does not testify as to occurrences which he has casually beheld, but as to his own self-acquired knowledge. There is no principle of law which allows a suitor to acquire the benefit of another man’s knowledge or skill through the strategem of calling him as a witness. And the Government in this is not above other litigants. If it would acquire the services, skill, or knowledge of an expert, it must be with his consent. The Secretary of War, therefore, was justified in entering into an agreement with these experts, and in-determining by contract the rate of their compensation.
*217 Whether an appropriation existed opt of which these experts could properly have been paid is another and distinct question. It is quite possible that a service can be required and a contract entered into though no appropriation exists to pay the debt so incurred. An act of the Commander-in-Chief of the Army or of the head of the War Department is not ultra vires because Congress have not foreseen a contingency and placed a fund at the disposition of the Executive. Congress can not foresee every necessary item of expenditure, and the employment of experts in military trials is of such rare occurrence that Congress might well omit to encumber the appropriation acts with an item which in the ordinary course of things will not be needed. Upon the question whether an appropriation existed in the year 1881 out of which Major Smith might properly have paid these experts the court expresses no opinion. It is sufficient for the present proceeding to say that in the opinion of the court the employment of experts in a trial before a court-martial is a matter within the legal and proper discretion of the Secretary of War; and that his order to employ and pay them is official authority to the officer who in the ordinary discharge of his duty makes the payment, and protects him from the summary remedy authorized by the Eevised Statutes and Army ^Regulations.
The order of the court is that the findings of fact and conclusions of law now filed in this matter, together with the opinion of the court, be certified to the Secretary of War for his guidance and action.